## NATHANIEL H. BANFIELD & another *vs.* HORACE WHIPPLE & another.

If a horse is let to A. and delivered by the owner to B., upon the credit of A., and the horse is driven to death by B. with the assent and aid of A., who is driving another horse near by, both may be held jointly liable to the owner.

Evidence that an original charge on books of account was made to one person is not conclusive evidence that the contract was made with him or on his credit.

In an action to recover damages for an injury to a hired horse, by immoderate driving, evidence is competent to prove that the defendant, immediately after the injury charged, made an assignment of all his property.

TORT against Horace Whipple and James Rowell. The writ was dated August 8th 1863. The second count in the declaration was as follows: " And the plaintiffs further say that the said Whipple hired of them a certain horse and carriage to drive in a moderate and proper manner; and the said Whipple agreed to return said horse to the plaintiffs in good order and condition. Yet the said Whipple, wholly regardless of his duty and undertaking in the premises, delivered said horse to said Rowell to drive, and the said Rowell improperly and immoderately drove said horse to Lowell and beyond said Lowell

to wit, to Tyngsboro and Hudson ; and the said Whipple aided and assented to said immoderate driving, by reason of which immoderate driving the said horse was killed by the said Whipple and Rowell, and the said Whipple never returned the said horse to the plaintiffs, but on the contrary with said Rowell, by reason of said immoderate driving, killed said horse." The defendants answered separately.

At the trial in the superior court, before *Morton,* J., it appeared that the defendants had arranged to take a pleasure excursion together on August 6th 1863, and on the morning of that day they started from Lawrence together, each driving a horse and buggy belonging to the plaintiffs, and each accompanied by a woman, and drove a few miles beyond Lowell, where the horse, called the bay colt, driven by Rowell, fell and died in a few minutes. There was evidence tending to show that the bay colt was killed by immoderate driving; and that the contract of hiring for both horses was made with Whipple, and that both horses were delivered upon the credit of Whipple; but this was denied by Whipple. It appeared that a few days before August 6th Whipple called at the plaintiffs' stable and engaged two teams for that day. The plaintiff Banfield testified that when Whipple engaged them, he in Whipple's presence entered them both upon his order slate in Whipple's name. The defendants testified that they saw the order slate at two different times prior to August 6th, and that one horse was entered to Whipple, and the bay colt to Rowell. Whipple also testified that the original entry of the charge for the bay colt was made to Rowell. It also appeared that the plaintiffs were acquainted with both defendants, and had let teams to each, prior to August 6th.

On the morning of August 6th Whipple called and took a horse and buggy, and soon after Rowell called and took the bay colt and buggy, delivered to him by Banfield, and soon afterwards the defendants met in Lawrence, and proceeded as above, Rowell having the full management and control of the bay colt

The defendant Whipple testified, among other things, in direct examination, that no claim had ever been made upon him for this dead horse. On cross-examination he testified that he had

no suspicion that any claim was to be made upon him by the plaintiffs, prior to the suit. The plaintiffs were then allowed to prove that on the 7tn of August he made an assignment of all his property, Rowell signing the same as attesting witness. The same evidence was also admitted, under the same circumstances, in relation to Rowell.

The defendants contended that they could not be held jointly, and asked the court to give the following rulings: " 1. If Whipple hired the horse, and afterwards the plaintiffs knew it was to be used by Rowell, then, although Whipple might be liable for its use, he cannot be held for conversion or immoderate driving; 2. If the original charge on the order slate was made to the defendants separately, then Whipple cannot be held; 3. Under the evidence, there is no relation of master and servant or principal and agent; 4. If Whipple engaged the horse, and the plaintiffs understood it was to be used by another, for the pleasure or benefit of another, and not for the pleasure or benefit of Whipple, and then the plaintiffs delivered the horse to Rowell, understanding that he was the party who was to use it, Whipple cannot be held."

Upon the subjects embraced in these prayers the judge instructed the jury, substantially, that the defendant Whipple was not liable unless they were satisfied that the contract of hiring was made with him as to both horses, and that both horses were delivered upon his credit; but if they were so satisfied, and that Whipple intrusted the bay colt to Rowell to drive, who killed it by immoderate driving, he was liable under the second count; that the charges upon the order slate were evidence upon this issue, and if made as claimed by the defendants, strong evidence against the plaintiffs, but not necessarily conclusive; that if Rowell killed the horse by immoderate driving, he would be liable under the second count, whether it was hired by Whipple or himself. He also gave instructions as to what would constitute immoderate driving, and other instructions in the case which were not excepted to.

The jury returned a verdict for the plaintiffs, and upon inquiry by the court stated that they found a verdict against both

defendants on the second count, and that the contract of hiring was made by Whipple, and the horse immoderately driven by Rowell so that he died. The defendants alleged exceptions.

*E. J. Sherman*, for the defendants. The defendants cannot be held jointly. They were not joint hirers. The act complained of was not their joint act. *Hewett v. Swift*, 3 Allen, 424. *Parsons v. Winchell*, 5 Cush. 592. *Campbell v. Phelps*, 1 Pick. 62. Whipple did not kill the horse himself, and Rowell was not his servant. Rowell had the full management and control of him, as the exceptions expressly find. *Sproul v. Hemmingway*, 14 Pick. 1. *Hilliard v. Richardson*, 3 Gray, 349. *Linton v. Smith*, 8 Gray, 147. The assignments were inadmissible in evidence. 1 Greenl. Ev. §§ 52, 448, 449.

*D. Saunders, Jr., & G. E. Hood*, for the plaintiffs.

GRAY, J. The jury, by their verdict for the plaintiffs, have found that the horse was hired of the plaintiffs by Whipple, and was driven immoderately by Rowell with the aid and assistance of Whipple, and thereby killed. The general verdict against both defendants is not qualified, or turned into a special verdict, by the answers of the jury to the inquiries of the judge. The answer that the horse was immoderately driven by Rowell is conclusive of his liability, but does not necessarily show that Whipple might not also be liable under proper instructions and on sufficient evidence.

It is true that a master cannot be held liable jointly with his servant for an injury done by the servant in the master's absence to a horse hired by the master. *Parsons v. Winchell*, 5 Cush. 592. But that rule does not apply to the case of a horse hired by one person, intrusted by him to another, and injured by the immoderate driving of the second in the presence and with the assistance of the first. If Whipple hired this horse, and coöperated in the immoderate driving, either by speaking to Rowell or to the horse, or by exciting this horse by fast driving of the other, or in any other manner, the plaintiffs' previous knowledge that this horse was to be driven by Rowell for his own pleasure could not exempt Whipple from liability.

Evidence that the original charge on the plaintiffs' books was

to Rowell by name was *prima facie* only, and not conclusive, that the contract of hiring was made with Rowell. *James* v. *Spaulding*, 4 Gray, 451. *Lee* v. *Wheeler*, 11 Gray, 239. *Commonwealth* v. *Jeffries*, 7 Allen, 564.

Whether the relation of master and servant, or principal and agent, existed between the defendants was a question of fact for the jury.

The specific instructions asked for were therefore rightly refused. The only instructions reported are those given " upon the subjects embraced in the prayers." The instruction that Whipple was liable if he hired both horses, and intrusted one to Rowell to drive, who killed it by immoderate driving, is to be taken as applied to the prayers for instructions, and to the admitted fact that the defendants were driving in company with each other when this horse was killed. No request was made for instructions upon the degree of presence and coöperation requisite to make Whipple liable as aiding and assisting in the immoderate driving by Rowell; and we must presume that this was covered by the instructions as to immoderate driving and other instructions, which, as the bill of exceptions states, were given and not excepted to.

The single exception taken to the admission of evidence relates to the assignments made by both defendants of all their property on the day after the accident. But these assignments made at that time, simultaneously, (Rowell being the attesting witness to Whipple's assignment,) without any proof of consideration except the recitals in the assignments, were some evidence that the defendants were conscious of liability and endeavored to escape from it, the weight of which was to be determined by the jury. *Stratton* v. *Farwell*, Middlesex, 1843.*

*Exceptions overruled.*

---

* The following note of that case was furnished by Mr. Justice Gray.

SIMON P. STRATTON *vs.* JACOB FARWELL.

ASSUMPSIT by the indorsee against the indorser of a negotiable promissory note made by Samuel Adams. The defence relied on was that the indorsement was forged. At the trial in the court of common pleas at December term 1842,

---

*Allen*, J., allowed the plaintiff, against the defendant's objection, to introduce evidence that the defendant, owning a large estate, on the same day on which Adams was arrested on his complaint for forging his name as indorser on this and like notes, and after the defendant had been sued on one such note, conveyed all his visible property, without valuable consideration, to his daughters and brother. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions, which at October term 1843 were

*Overruled by this court.*

*E. Buttrick,* for the defendant.

*E Mellen & E. R. Hoar,* for the plaintiff.